******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# C. P. *v.* CAROL RIORDAN[*]
## (AC 48829)

Clark, Westbrook and Wilson, Js.

*Syllabus*

The defendant appealed from the trial court's judgment granting the plaintiff's application for an order of civil protection on the basis of stalking. The defendant claimed, inter alia, that the court improperly concluded that the plaintiff had met her burden of establishing that she was entitled to the order of civil protection pursuant to statute (§ 46b-16a). *Held*:

The trial court did not abuse its discretion in finding that the plaintiff proved the necessary elements under § 46b-16a for the issuance of an order of civil protection, as the court credited the plaintiff's testimony that she feared for her physical safety, which established the subjective prong of the fear analysis under § 46b-16a, the content and repetitive nature of the defendant's emails to the plaintiff, in combination with her menacing behavior while driving past the plaintiff, were sufficient for the court to conclude that a person in the plaintiff's position would reasonably fear for her personal safety, which established the objective prong of the fear analysis under § 46b-16a, and the defendant's recent conduct, in sending emails to the plaintiff and menacing the plaintiff, was sufficient for the court to find that the defendant would continue to stalk the plaintiff if a civil order of protection was not granted.

The trial court did not abuse its discretion when it precluded the defendant from testifying regarding her claim that the plaintiff had allegedly harassed her, as the defendant offered the evidence to prove only that she was not delusional, which was irrelevant to the court's determination of whether the plaintiff's application for an order of civil protection should be granted and, therefore, was inadmissible.

This court declined to review the defendant's claim that the trial court's issuance of the order of civil protection violated her right to free speech under the first amendment to the United States constitution and under article first, §§ 4, 5 and 14, of the Connecticut constitution, as the defendant failed to adequately brief that issue.

Argued April 16—officially released July 21, 2026

*Procedural History*

Application for a civil protection order, brought to the Superior Court in the judicial district of Middlesex and

---

[*]In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2024); we decline to identify any person protected or sought to be protected under a protection order, protective order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

tried to the court, *Baldini*, *J.*; judgment granting the application and issuing an order of civil protection, from which the defendant appealed to this court. *Affirmed*.

*Terry Donovan*, with whom was *Jeremiah Donovan*, for the appellant (defendant).

*Matthew S. Blumenthal*, for the appellee (plaintiff).

*Opinion*

WESTBROOK, J. The defendant, Carol Riordan, appeals from the judgment of the trial court granting the application of the plaintiff, C. P., for an order of civil protection pursuant to General Statutes § 46b-16a[1] on the basis of stalking. On appeal, the defendant claims that the trial court improperly (1) found that the plaintiff met her burden of establishing that she was entitled to an order of civil protection pursuant to § 46b-16a,[2] (2) excluded the defendant's testimony as irrelevant, and

[1] General Statutes § 46b-16a (a) provides: "Any person who has been the victim of sexual abuse, sexual assault or stalking may make an application to the Superior Court for relief under this section, provided such person has not obtained any other court order of protection arising out of such abuse, assault or stalking and does not qualify to seek relief under section 46b-15. As used in this section, 'stalking' means two or more wilful acts, performed in a threatening, predatory or disturbing manner of: Harassing, following, lying in wait for, surveilling, monitoring or sending unwanted gifts or messages to another person directly, indirectly or through a third person, by any method, device or other means, that causes such person to reasonably fear for his or her physical safety."

[2] In her appellate brief, the defendant claims that the trial court improperly concluded that the plaintiff established the elements required by § 46b-16a (a) and (b). She also claims that the court improperly found that the plaintiff established that the defendant would continue to stalk the plaintiff. See General Statutes § 46b-16a (b) ("[i]f the court finds that there are reasonable grounds to believe that the respondent has committed acts constituting grounds for issuance of an order under this section and will continue to commit such acts, or acts designed to intimidate or retaliate against the applicant, the court, in its discretion, may make such orders as it deems appropriate for the protection of the applicant"). Although the defendant has briefed these claims separately, each, in fact, concerns an element required to be proved by § 46b-16a (a) and (b). Therefore, we will address these claims together as separate arguments in support of a singular claim as we have restated it.

(3) issued an order of civil protection in violation of her right to free speech under the first amendment to the United States constitution and article first, §§ 4, 5 and 14, of the Connecticut constitution. We disagree and, accordingly, affirm the judgment of the trial court.

The court, *Baldini, J.,* found the following facts in support of its decision to grant the plaintiff's application for an order of civil protection. The plaintiff formerly served as a member of the Connecticut legislature and left office on January 8, 2025. The defendant was both her neighbor and constituent; however, the defendant has since moved.

On October 6, 2023, the defendant made "[a]n unwanted visit . . . [to the plaintiff's] home at 6 [a.m.] or so in the morning, after [the defendant] had texted her at 3 a.m." After this visit, "[the plaintiff] asked the [defendant] not to contact her . . . . This was communicated to the . . . [defendant] via text. This request was received by the [defendant], as indicated by the [defendant's response] in both an email and a text." In the defendant's October 10, 2023 email, she stated, "I certainly will honor your wishes in terms of avoiding contact."

After the plaintiff informed the defendant of her wishes, the defendant, nonetheless, contacted the plaintiff on multiple occasions throughout February 2025, after the plaintiff had left political office. During this period, the defendant sent four emails to the plaintiff's personal email address. The February 11, 2025 email stated, in relevant portion, "lovely to run into you yesterday . . . . I had been thinking of you because your associate . . . has been in touch with me"; the February 12, 2025 email contained the phrase "police services"; the February 15, 2025 email stated, "phones have been analyzed" and "it is only a matter of time"; and the last email, from February 16, 2025, stated, "Retaliation and harassment" in its subject line. Additionally, around this time, the defendant "revv[ed] her [car's engine] and blar[ed] her horn, while driving [in the direction of the plaintiff] on a residential street." Additionally, the defendant "falsely

accused [the plaintiff] of doing things that [the plaintiff] did not do, namely hiring shadowy figures, hacking her email, [and] hiring people to trail her."

The court, in its May 28, 2025 oral decision, concluded that the plaintiff carried her burden of proof and found that "[t]here's evidence that acts constituting . . . harassing, following, lying in wait for, surveilling or monitoring or sending unwanted gifts or messages to another person directly, indirectly, or through a third person, by any method, device, or means . . . were performed in a . . . threatening, predatory, or disturbing manner," and that these actions could reasonably result in the plaintiff feeling fear. The court, having "evaluated [the plaintiff's] claimed fear using the subjective objective standard" and having considered whether the defendant was likely to continue stalking, pursuant to § 46b-16a, granted the plaintiff's application for an order of civil protection. This appeal followed.

I

We first address the defendant's claim that the trial court abused its discretion in granting the plaintiff's application for an order of civil protection. The defendant argues that the court improperly found that the plaintiff met her burden of establishing that she was entitled to an order of civil protection pursuant to § 46b-16a. We disagree.

We begin by setting forth the applicable standard of review and legal principles that are relevant to our resolution of the defendant's claim. "We apply the same standard of review to civil protection orders under § 46b-16a as we apply to civil restraining orders under General Statutes § 46b-15.[3] Thus, we will not disturb a trial court's orders unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion . . . we allow every reasonable presumption in favor of the correctness

---

[3]See *L. H.-S.* v. *N. B.*, 341 Conn. 483, 486, 489, 267 A.3d 178 (2021).

of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Our deferential standard of review, however, does not extend to the court's interpretation of and application of the law to the facts. It is axiomatic that a matter of law is entitled to plenary review on appeal." (Footnote added; internal quotation marks omitted.) *S. S.* v. *D. M.*, 228 Conn. App. 559, 562–63, 324 A.3d 233 (2024).

"[A]n applicant for a civil protection order on the basis of stalking [pursuant to §46b-16a] is required to prove only that there are reasonable grounds to believe that a defendant stalked and will continue to stalk . . . . A finding of reasonable grounds to believe stalking occurred is equivalent to a finding of probable cause that stalking occurred. . . . While probable cause requires more than mere suspicion . . . the line between mere suspicion and probable cause necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances. . . . The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. . . . In dealing with probable cause . . . as the very name implies, we deal with probabilities." (Citations omitted; footnote omitted; internal quotation marks omitted.) *C. A.* v. *G. L.*, 201 Conn. App. 734, 740–41, 243 A.3d 807 (2020).

"In order for a court to issue an order of civil protection under §46b-16a on the basis of stalking, it must find that there are reasonable grounds to believe that the defendant both stalked the plaintiff and will continue to commit such acts. . . . If a court issues an order without a proper finding or without sufficient evidence to support such a finding, as to either stalking or the continuation of such acts, it will constitute an abuse of discretion."

(Citations omitted.) *S. B-R.* v. *J. D.*, 208 Conn. App. 342, 347–48, 266 A.3d 148 (2021).

"Stalking for purposes of obtaining a civil protection order . . . covers a . . . [broad] range of prohibited actions. Section 46b-16a (a) provides in relevant part: 'As used in this section, "stalking" means two or more wilful acts, performed in a threatening, predatory or disturbing manner of: Harassing, following, lying in wait for, surveilling, monitoring or sending unwanted gifts or messages to another person directly, indirectly or through a third person, by any method, device or other means, that causes such person to reasonably fear for his or her physical safety.' Thus . . . [to] trigger a civil protection order, the plaintiff needed only to allege and prove that, on two occasions, the defendant harassed, surveilled or monitored her in a manner that reasonably caused her to fear for her physical safety." *S. A.* v. *D. G.*, 198 Conn. App. 170, 190, 232 A.3d 1110 (2020).

Furthermore, our Supreme Court has established that the test to determine whether a plaintiff has experienced fear sufficient to induce an order of civil protection has both subjective and objective components. "[T]o establish fear, the plaintiff [is] required to establish that she subjectively feared for her personal safety. Additionally, 'such person['s]' fear must be 'reasonabl[e] . . . .' General Statutes § 46b-16a (a). This language adds an objective requirement." *L. H.-S.* v. *N. B.*, 341 Conn. 483, 494, 267 A.3d 178 (2021). Put differently, "the situation and the facts must be evaluated from the perspective of the victim, i.e., did [she] in fact fear for [her] physical safety. . . . If so, that fear must be objectively reasonable, i.e., a reasonable person under the existing circumstances would fear for his or her personal safety." *S. S.* v. *D. M.*, supra, 228 Conn. App. 566.

On the basis of our review of the record, we conclude that, in the present case, the trial court did not abuse its discretion in finding that the plaintiff proved the necessary elements under § 46b-16a. After the defendant's unwanted appearance at the plaintiff's door in

the early morning hours of October 6, 2023, and after the plaintiff stated her displeasure with the contact, the defendant said that she would no longer contact the plaintiff. Almost immediately, however, she continued to contact the plaintiff by email. Later, in 2025, one month after the plaintiff resigned from her position as a state representative, the defendant's emails caused the plaintiff to feel threatened, and the court subsequently found that they were disturbing. In the defendant's February 11, 2025 email, after accusing the plaintiff of colluding with someone whom the defendant says "gunned [his] vehicle when parking so it came onto the sidewalk very close to" her, she stated, "Maybe with your workplace sensitivity and anti-harassment training expertise you could work with him on his road rage? I'd appreciate it!" She followed up with an email on February 12, 2025, that stated, "[For your information], I am forwarding emails to [local] Police Services and police services outside the state. As they say, sunshine banishes the shadows." Three days later, the defendant sent another email stating that "[t]he additional harassment on [February] 13 has been duly noted. My phones have been analyzed. Now, it is only a matter of time." In her last email, on February 16, 2025, she made multiple allegations, including "official misconduct," "intense retaliation and harassment," "vandalism" to the defendant's vehicle, and "hacks" of the defendant's online accounts. The plaintiff was also menaced by the defendant after the defendant continuously honked her horn and revved her vehicle's engine at the plaintiff while driving past the plaintiff.

The court credited the plaintiff's testimony that she feared for her physical safety, which establishes the subjective prong of the fear analysis. See *L. H.-S.* v. *N. B.*, supra, 341 Conn. 494 ("to establish fear, the plaintiff [is] required to establish that she subjectively feared for her personal safety"). The court's finding that the defendant's actions were disturbing was reasonable. Merriam-Webster's Collegiate Dictionary defines "disturbing" as "causing feelings of worry, concern, or anxiety . . . ." Merriam-Webster's Collegiate Dictionary (12th Ed.

2026) p. 481. Both the content and repetitive nature of the defendant's 2025 emails, in combination with the defendant's menacing behavior while driving past the plaintiff, also were sufficient for the court to conclude that a person in the plaintiff's position would reasonably fear for her personal safety.

We next address whether the defendant was likely to continue stalking the plaintiff. The plaintiff was the subject of the defendant's stalking for one and one-half years. The majority of her messages, although they address a subject matter relating to actions taken by the plaintiff in her capacity as a state representative, were sent through nonofficial channels, such as the emails sent to the plaintiff's personal email address, the text messages sent to the plaintiff's personal phone number, and a handwritten note the defendant attempted to place on the plaintiff's door. After the interaction between the defendant and the plaintiff, which stemmed from the defendant's attempt to leave the note on the plaintiff's door, the defendant appeared to understand that the plaintiff did not want to be contacted by the defendant again. Despite this understanding, which was clearly established in the defendant's October 10, 2023 email to the plaintiff, the defendant, within a short amount of time, initiated communication with the plaintiff again. This communication, although it slowed at times, never ceased. In fact, the February 2025 emails illustrate the frequency with which the defendant sent these messages. The combination of the recent emails and the recent menacing of the plaintiff was enough for the court to find that the defendant would continue to stalk the plaintiff if the application for a civil order of protection was not granted.

We conclude, on the basis of our thorough review of the record, that the trial court did not abuse its discretion by granting the plaintiff's application for a civil order of protection on the basis of stalking pursuant to § 46b-16a. The plaintiff received multiple unwanted emails and texts from the defendant over the course of

one and one-half years, ultimately prompting her to file her application for a civil order of protection. The record supports the trial court's determination that the defendant was likely to continue stalking the plaintiff on the basis of her previous behavior. We conclude that the trial court did not abuse its discretion in granting the application for an order of civil protection.

## II

Next, we address the defendant's claim that the trial court abused its discretion when it improperly precluded her from testifying about alleged harassment by the plaintiff. We disagree.

The following additional facts are relevant to our resolution of this claim. At the initial hearing for the application for an order of civil protection, during direct examination of the defendant, the defendant's counsel attempted to elicit testimony that the defendant was being stalked and harassed because of alleged actions taken by the plaintiff. The court attempted to determine how this evidence was relevant to the application before it, which resulted in the following colloquy:

"The Court: She's saying she's a victim of stalking.

"[The Defendant's Counsel]: Yes, Your Honor.

"The Court: By who?

"[The Defendant's Counsel]: . . . [S]he's of the belief that [the plaintiff] has caused the surveillance of her home . . . .

"The Court: Okay. Well . . . [the plaintiff] is the applicant for a civil restraining order. . . . [The defendant] is not, [the defendant] is the respondent."

After further discussion, the trial court was able to determine that the defendant's counsel elicited this testimony to establish that the defendant herself was "being stalked and followed . . . ." The court then asked the defendant's counsel if she was attempting to establish that the plaintiff was the person stalking the defendant,

which could have undermined the plaintiff's credibility. The defendant's counsel responded, "No. It's that [the plaintiff] has characterized . . . the [defendant] . . . [as] delusional . . . ." It was the defendant's belief that, if she could establish that she was the subject of stalking, then she could prove that she is not delusional. The court responded, "if she feels that she's being stalked and followed, there is no application by her in front of this court."

In the defendant's memorandum in support of her motion to reargue, she argues that the court improperly found "that testimony by the [defendant] concerning the fact that she . . . has been the victim of stalking and vandalism 'doesn't have relevance to this proceeding' . . . when the [defendant] has reason to believe that those acts may have been committed at the behest of the [plaintiff]." (Citation omitted.) At the hearing on the motion, however, the defendant's counsel argued that "there were other things that my client wanted to testify to, that she didn't get to testify to." For example, "[s]he would have addressed the fact that it wasn't just that the police were sent to surveil her, it was that she had been stalked by someone—a couple of different people had been following her around. And someone had tampered twice, at separate occasions, with her car. . . . [S]he wanted to testify about the details of that. . . . And that, that's why she wasn't being delusional . . . ."

The court responded that "the point of the matter is . . . that I asked you, specifically, is she accusing [the plaintiff] of [stalking her]? Because that would go to the heart of the very issue of [the plaintiff's] credibility. . . . But . . . [y]ou said, no . . . we want to introduce this evidence to show that she's not delusional." The defendant's counsel stated that she had responded as such to the court's question because she was arguing that the plaintiff directed others to follow the defendant and was not doing so herself. The court noted, however, that the defendant's counsel had an opportunity to cross-examine the plaintiff to elicit the very testimony she sought to

elicit from the defendant. At the close of the hearing, the trial court ruled in favor of the plaintiff and upheld its previous ruling granting the application for a civil order of protection.

"Evidentiary rulings in relation to a civil order of protection are reviewed under the same well established standard as in other cases. . . . [R]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter. . . . The trial court has wide discretion to determine the relevancy of evidence and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *L. H.-S.* v. *N. B.*, supra, 341 Conn. 501–502.

"Relevance does not exist in a vacuum. . . . Relevant evidence, according to § 4-1 of the Connecticut Code of Evidence, is evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . To determine whether a fact is material . . . it is necessary to examine the issues in the case, as defined by the underlying substantive law, the pleadings, applicable pretrial orders, and events that develop during the trial. Thus, the relevance of an offer of evidence must be assessed against the elements of the cause of action, crime, or defenses at issue in the trial. The connection to an element need not be direct, so long as it exists. Once a witness has testified to certain facts, for example, his credibility is a fact that is of consequence to [or material to] the determination of the action, and evidence relating to his credibility is therefore relevant—but only if the facts to which the witness has already testified are themselves relevant to an element of a crime, cause of action, or defense in the

case." (Internal quotation marks omitted.) *S. A.* v. *D. G.*, supra, 198 Conn. App. 183–84.

Here, the testimony the defendant attempted to have admitted through direct examination was not relevant to the determination of whether the plaintiff's application for a civil order of protection should be granted. Accordingly, the trial court did not abuse its discretion by precluding the defendant from testifying with respect to her claim that she was the subject of harassment. Section 46b-16a (a) requires a party seeking a civil order of protection, on the basis of stalking, to prove that such party was the subject of "two or more wilful acts, performed in a threatening, predatory or disturbing manner . . . ." See also *S. A.* v. *D. G.*, supra, 198 Conn. App. 190. The party must then establish that they felt fear as a result of the stalking and that the fear was objectively reasonable. *L. H.-S.* v. *N. B.*, supra, 341 Conn. 494. The party then must establish that the stalking is likely to continue. See *S. B-R.* v. *J. D.*, supra, 208 Conn. App. 347–48.

The evidence that the defendant sought to admit to establish that she was being harassed and followed was offered only to prove that she was not delusional. Significantly, the defendant expressly stated that she was not offering the evidence to show that the plaintiff stalked or harassed her and did not argue that the evidence was being introduced to challenge the credibility of the plaintiff's claim that she reasonably feared for her safety as a result of the defendant's actions. Whether the defendant was delusional in her belief that she was being stalked, however, was completely irrelevant to the trial court's determination. Without any logical connection to the issues properly before the court in ruling on the application for a civil order of protection, the evidence is not relevant and is inadmissible. The trial court, therefore, did not abuse its discretion by refusing to allow the defendant's irrelevant testimony.

III

The defendant's final claim is that the trial court's issuance of the civil order of protection violated her right

to free speech under the first amendment to the United States constitution and article first, §§4, 5 and 14, of the Connecticut constitution. We decline to review this claim because the defendant failed to adequately brief the issue.

"We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [Simply put, we] do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . Our Supreme Court has recognized that adequate briefing is of particular importance whenever the appellant is asserting a violation of his first amendment rights because of the analytical complexity of such claims. See *State* v. *Buhl*, 321 Conn. 688, 726, 138 A.3d 868 (2016) (upholding Appellate Court's decision not to review first amendment and due process claims because they were inadequately briefed). In *Buhl*, the court quoted federal precedent for the proposition that [f]irst [a]mendment jurisprudence is a vast and complicated body of law that grows with each passing day and involves complicated and nuanced constitutional concepts. . . . In considering the adequacy of briefing, it is proper for this court to consider, among other factors, **(1)** whether the claim is stated clearly and succinctly such that its contours can be understood by the court and the opposing party, **(2)** the relative sparsity of any analysis, meaning how much of the brief is dedicated to the claim, **(3)** whether the analysis is confusing, repetitive [or] disorganized, and **(4)** whether the appellant has cited, analyzed and applied relevant legal authority." (Citations omitted; internal quotation marks omitted.) *S. A.* v. *D. G.*, supra, 198 Conn. App. 191–92.

The defendant in the present case claims that "[t]he court's ruling is a grave and troubling threat to a citizen's right to free speech, to criticize governmental officials, to petition for redress of grievances, and to

remonstrate against perceived governmental injustices." The defendant then presents the standard of review in a manner that hints that her argument is that § 46b-16a, on its face, is unconstitutional. The defendant states in her brief that "[i]t is a 'well established principle that determining the constitutionality of a statute presents a question of law subject to plenary review.'" At oral argument, however, the defendant's counsel claimed that the statute is unconstitutional as applied to the defendant. Thus, the defendant's constitutional claim is, at best, inconsistent, which makes it difficult, if not impossible, to discern the contours of her argument. See *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 805, 256 A.3d 655 (2021) (holding that claim that was internally inconsistent as briefed supported finding of inadequate briefing).

Additionally, the defendant's briefing of her constitutional claim is sparse, consisting of only five pages of her forty-two page brief. "Although the number of pages devoted to an argument in a brief is not necessarily determinative, relative sparsity weighs in favor of concluding that the argument has been inadequately briefed. This is especially so with regard to first amendment and other constitutional claims, which are often analytically complex." *State* v. *Buhl*, supra, 321 Conn. 726; see also *Cohen* v. *Rossi*, 346 Conn. 642, 689, 295 A.3d 75 (2023) (holding that claim of error raising four distinct arguments that was addressed in less than two pages of brief was inadequately briefed).

The extent of the defendant's analysis of her claim is a one sentence paragraph that seemingly argues that the defendant's communications were simply remonstrances.[4] Throughout her five pages of argument, the defendant cites the United States constitution, the

---

[4] "[The defendant] communicated with the . . . zoning officials, her state representative, and her first selectman, criticizing the town's procedures in approving a major development and her state representative's role in securing those approvals—if these communications were not 'remonstrances,' it is difficult to imagine what a 'remonstrance' might look like."

Connecticut constitution, and ostensibly relevant case law. The defendant, however, fails to analyze this precedent and apply it to her claim. See *Olson* v. *Freedom of Information Commission*, 238 Conn. App. 625, 631, 356 A.3d 452 (2026) (claim was inadequately briefed, as plaintiff failed to provide analysis applying precedent to facts). Although the defendant claims that her communication was simply a remonstration, she provides no precedential support, which could tend to prove that the speech engaged in was a remonstrance. This deficiency in clarity supports our conclusion that the defendant has inadequately briefed her constitutional claim.

On the basis of the foregoing, we conclude that the defendant has inadequately briefed her claim. This court is unable to ascertain what the precise alleged constitutional violation is and whether it deprived the defendant of a fair trial. Accordingly, we decline to review the defendant's claim.

The judgment is affirmed.

In this opinion the other judges concurred.